IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY L. SMITH, | : | |
|         Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| N3 OCEANIC, INC., | : | No. 16-730 |
|         Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                   **December 14, 2016**

      Nancy Smith, a 72-year-old woman, worked for N3 Oceanic, Inc. ("N3"). N3 hired an 18-year-old woman and subsequently fired Smith four days later. Smith sued N3 under the Age Discrimination in Employment Act ("ADEA"), alleging that she was fired and replaced with a younger employee because of her age, and in retaliation for complaints about age discrimination. N3 contends that it fired Smith because she disparaged N3's management to a customer. N3 has moved for summary judgment. Because there is no evidence in the record rebutting N3's legitimate reason for firing Smith and because Smith did not engage in protected conduct, the Court will grant N3's motion.

**I.    BACKGROUND**

      In late 2014, Smith was a 72-year-old woman working for N3, a nutritional supplementation company. (Pl.'s Compl. ¶ 6; Def.'s Statement of Undisputed Facts ¶ 22.) Smith was a Customer Service Representative ("CSR") responsible for answering phone calls and placing orders. (Kintzel Dep. 13-14.) Smith was the oldest CSR working for N3. (Pl.'s Compl. ¶ 14.) N3's management generally regarded Smith as a good employee, but had some problems

with her attitude. (Kintzel Dep. 55; Def.'s Mot. Summ. J. Exs. G, H.) Indeed, Smith had repeatedly complained to management about N3's pricing and promotions. (Kintzel Dep. 33.)

Towards the end of Smith's employment, N3 received an email from an unsatisfied customer, Steve Corsello, complaining about misleading and inconsistent promotional practices. (Pl.'s Answer to Def.'s Mot. Summ. J. Ex. D.) Corsello claimed that the CSRs' told him their concerns regarding the promotions "fall[] on deaf ears with management." (*Id.*) One of Smith's supervisors, Stefanie Kintzel, cross-referenced information in the email with N3's ordering database and found that Smith was the CSR who handled Corsello's order. (Kintzel Dep. 32.) Kintzel also believed that the language in the email correlated with the complaints Smith had previously made to management about N3's pricing structure. (Kintzel Dep. 33.) Smith denies making the comments. (Pl.'s Dep. 98.)

After Corsello's complaint, N3 hired Kristine McNealon, an 18-year-old woman, to work as a CSR. (Ackerman Dep. 25.) N3 scheduled McNealon to work Sundays, a shift Smith did not herself work. (Ackerman Dep. 25.) Four days later, N3 fired Smith, citing lack of work, attitude problems, and the customer complaint. (Ackerman Dep. 25, 27-28, Ex. 8 at 2.) Two days after that, McNealon resigned. (Def.'s Mot. Summ. J. Ex. J.)

Prior to her termination, Smith formally met with management on behalf of the other CSRs regarding wages and paid time off, but not age discrimination. (Pl.'s Dep. 42, 48.) Several months later, Smith completed a waiver of health benefits coverage, indicating "cannot afford – discrimination" as to why she elected to refuse coverage. (Pl.'s Answer to Def.'s Mot. Summ. J. Ex. E.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 247. Once the moving party has met its burden, the nonmoving party must go beyond the pleadings to set forth specific facts in the record showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

Smith alleges that N3 violated the ADEA with discrimination based on age and retaliating for protected conduct. N3 claims they had a legitimate reason to fire Smith and that Smith never engaged in protected conduct. The Court will address each of these in turn.

### A. Discrimination Claim

#### 1. Prima Facie Case

Age discrimination cases brought under the ADEA are subject to the burden shifting framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *Smith v.*

*City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (applying *McDonnell Douglas* to an ADEA claim). The first prong in the framework is plaintiff's prima facie case. *McDonnell Douglas,* 411 U.S. at 802. In order to establish a prima facie case of age discrimination under the ADEA, the plaintiff must allege four factors: (1) she is over 40 years old; (2) she is qualified for the position; (3) she suffered from an adverse employment decision; and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Ptasznik v. Univ. of Pa.*, 523 Fed. Appx. 156, 159 (3d Cir. 2013).

The first three factors are not in dispute here. At the time she was fired, Smith was 72 years old and was qualified for the position. N3 argues that Smith was not "replaced" by McNealon either because McNealon worked a shift Smith did not or because McNealon left N3 two days after Smith was fired. Neither argument is satisfactory. McNealon and Smith worked identical jobs with largely overlapping schedules. (Pl.'s Dep. 80-82.) To say that McNealon did not replace Smith simply because Smith did not work Sundays would mangle the fourth prong of *McDonnell Douglas*, giving employers a gaping loophole through which to discriminate. Additionally, the fact that McNealon resigned two days after Smith was fired is irrelevant as to whether N3 hired McNealon as a replacement. Because there is no evidence N3 knew McNealon would resign prior to terminating Smith's employment, a reasonable inference is that N3 hired McNealon to replace Smith. Therefore, Smith has made out a prima facie case of age discrimination.

### 2. Legitimate Nondiscriminatory Reason

Once the plaintiff has made out a prima facie case, the second prong of the *McDonnell Douglas* framework requires the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden

of production at this stage is "relatively light" and the proffered reason does not have to be the actual cause of the negative employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

N3 articulates several legitimate, nondiscriminatory reasons for Smith's termination. Standing alone, the customer complaint traced back to Smith is sufficient. In addition, Smith's record of attitude problems and N3's lack of work constitute additional legitimate, nondiscriminatory reasons.

### 3. Demonstrating Pretext

Once the employer has proffered a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show pretext. The third and final prong of the *McDonnell Douglas* framework gives the plaintiff a "full and fair opportunity to demonstrate . . . that the presumptively valid reasons for his rejection were in fact a coverup for a . . . discriminatory decision." *McDonnell Douglas*, 411 U.S. at 805. Plaintiff must point to evidence that either: (1) casts doubt on the employer's "articulated legitimate reasons" or (2) demonstrates that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. At this third stage, plaintiff faces a "difficult burden." *Id.* at 765.

#### a. Cast Doubt on Articulated Legitimate Reasons

In order to cast doubt on the employer's reasons, plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765 (emphasis omitted) (quotations omitted). Courts need not inquire whether the employer's decision was "wise, shrewd, prudent, or competent." *Id.* "Unwise does

not mean discriminatory." *Andersen v. Mack Trucks, Inc.*, 674, Fed. Appx. 130, 132 (3d Cir. 2016). "[I]f an employer's belief supporting its adverse personnel action is reasonable, the employer is not required to investigate further." *Neiderlander v. Am. Video Glass Co.*, 80 Fed. Appx. 256, 259 (3d Cir. 2003).

Smith fails to cast doubt on N3's articulated reasons for termination. Most importantly, Smith attempts to undermine N3's response to Corsello's complaint but fails to address the decision's reasonableness. It is true that Corsello did not identify Smith as the CSR he spoke to, that Smith denied telling Corsello that "concern[s] fall on deaf ears with management," and that N3 did not follow up with Corsello to confirm Corsello spoke to Smith. (Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. 13.) But Smith offers no evidence discrediting the reasonableness of N3's termination decision. It is undisputed that Kintzel cross-referenced Corsello's email with an order entry in the system, identifying Smith as the CSR who took Corsello's order. (Kintzel Dep. 32-33; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 73-76; Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. Ex. D.) Kintzel's assertion in her deposition that Smith made similar complaints about N3's pricing and promotions remains unrebutted. (Kintzel Dep. 33; Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. ¶ 77.) Taken together, these two facts comprise the foundation for N3's reasonable business decision in firing Smith. Because N3's decision was reasonable, it is under no obligation to further investigate the incident. *Neiderlander*, 80 Fed. Appx. at 259.

Moreover, there is nothing inconsistent about N3's proffered reasons for the firing decision. Smith argues N3's reasons for termination—namely, a lack of work, a customer complaint, and attitude problems—are inconsistent. (Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. 11-12.) But simply because N3 offers multiple grounds for terminating Smith does not mean the grounds themselves are weak, implausible, inconsistent, incoherent, or contradictory. *Fuentes*, 32

F.3d at 765. First, these three reasons are not mutually exclusive. The customer complaint and attitude problems reinforce each other while lack of work stands independent of the first two. Second, lack of work is not inconsistent with McNealon's hiring. McNealon was hired to work Sundays, a day Smith did not work. Another supervisor also testified that she indicated "lack of work" on Smith's termination paperwork in order to help Smith find a new job. (Ackerman Dep. 27-28.) Smith offers no evidence to rebut either of these rationalizations. Thus, Smith fails to cast doubt on N3's proffered reasons.

### b.     Invidious Discriminatory Reason

A plaintiff can also demonstrate pretext by pointing "to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers*, 142 F.3d 639, 644-45 (3d Cir. 1998) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997)). Examples of evidence the plaintiff can point to include "showing that the employer has previously discriminated against the plaintiff, that the employer has discriminated against members of the plaintiff's protected class or another protected class, or that similarly situated people not within plaintiff's class were treated more favorably." *Peake v. Pa. State Police*, 644 Fed. Appx. 148, 153 (3d Cir. 2016).

In order to determine whether similarly situated employees were treated more favorably in ADEA cases, courts have used "similarly situated comparators." *Id.* (borrowing the "similarly situated comparators" analysis from the prima facie case of a racial discrimination). While the plaintiff and the comparator need not be "identically situated," they must be "similar in all relevant respects." *Opsatnik v. Norfolk Southern Corp.*, 335 Fed. Appx. 220, 222-23 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). "All relevant respects"

includes not only similar job descriptions, but also similar disciplinary records. *Simpson*, 142 F.3d at 647 ("[T]he focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.")

Smith points to no evidence that N3 had previously discriminated against her or previously discriminated against any other employee based on age. As for similarly situated employees receiving favorable treatment, Smith cannot point to a legally sufficient comparator. Smith's only proffered, age-related reasons for why her employment was terminated were because the remaining CSRs were younger and because they had less experience than she did. (Pl.'s Dep. 25) There are no younger comparators that received more favorable treatment. Even if Smith could argue that the younger CSRs were all comparators, there is no evidence that any of the retained CSRs engaged in conduct warranting discipline similar to Smith's. Because N3's primary reason for firing Smith was the Corsello email, any valid comparator would need to have engaged in similar conduct detrimental to N3. As there is no valid comparator before the court, Smith cannot show that an invidious discriminatory reason was more likely than not the cause of her termination. Thus, Smith fails to establish pretext.

    **B.**     **Retaliation Claim**

Plaintiff must demonstrate three elements in order to make out a retaliation claim under the ADEA: "(1) she was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Ptasznik*, 523 Fed. Appx. at 160 (quoting *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 515-16 (3d Cir. 2004)). Protected activities include "formal charges of discrimination as well as informal protests of discriminatory employment practices." *Barber v. CSX Distrib. Servs.*, 68

F.3d 694, 702 (3d Cir. 1995) (internal quotation omitted). Protected conduct does not, however, include mere complaints "about unfair treatment" that fail to reference "a protected characteristic as the basis for the unfair treatment." *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D. Pa. 2014). "A general complaint of unfair treatment does not translate into a charge of illegal age discrimination." *Barber*, 68 F.3d at 702. Rather, the alleged discrimination must be regarding age, the characteristic protected by the ADEA. *Id.*

Smith only offers two activities allegedly protected under the ADEA: a meeting prior to her termination with supervisors about compensation and an insurance form on which she complained of "discrimination." (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 51-54; Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. Ex. E.) Smith conceded that she never complained to supervisors about age discrimination, including at the 2014 meeting. (Pl.'s Dep. 42, 59.) Smith's generic, nondescript complaint about compensation is not protected activity under the retaliation sections of the ADEA. Further, the statement of "discrimination" on the insurance form does not reference any type of discrimination. If anything, the form is a general complaint of unfair treatment, which is also not protected activity. *Barber*, 68 F.3d at 702. Therefore, Smith's retaliation claim fails because she did not engage in protected conduct.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. An order consistent with this Memorandum will be docketed separately.